**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAZHONG SONG,<br><br>            Plaintiff,<br><br>    v.<br><br>YUN ZHANG,<br><br>            Defendant. | Civil Action No. 21-17918 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

**CASTNER, U.S.D.J.**

**THIS MATTER** comes before the Court upon Defendant Yun Zhang's Motion for Reconsideration, which asks the Court to reconsider its June 23, 2023 Letter Order that denied Defendant's third motion to dismiss the Complaint. (ECF No. 30.) Plaintiff opposed, and Defendant replied. (ECF Nos. 31-34.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's motion is **DENIED**.

**I.    BACKGROUND**

This is a breach of contract case stemming from a loan to fund a divorce lawsuit in New Jersey. Defendant Yun Zhang, a resident of Princeton, New Jersey, and her former husband Xuehai Li are alleged to have borrowed $82,468.00 in 2015 from Plaintiff Dazhong Song, a resident of the People's Republic of China.[1] (ECF No. 1 ¶¶ 1-2, 5.)

---

[1]  According to the loan agreement, the borrowers were to receive $75,000.00, with the difference representing one-year's interest pre-paid and a $50.00 bank charge. (ECF No. 1 at 5.)

The loan agreement states that interest would accrue at the rate of nine percent (9%) per annum if repaid within one year from the date the funds were received by the borrowers. (*Id.* ¶ 6.) If not repaid within a year, the agreement states that the lender "has the legal right to collect daily interest" of half a percent (0.5%). (*Id.* ¶ 7; *see also id.* at 6.[2]) The agreement envisions that the loan would be secured by a mortgage on real property owned by the borrowers, but the mortgage was not furnished, and the property has since been sold in bankruptcy. (*Id.* ¶¶ 8-15.) Plaintiff alleges that Defendant is in breach of the loan agreement and, as of September 30, 2021, owes $832,773.58, which includes the principal balance of $82,468.00, accrued interest of $35,255.07, and penalties of $715,050.51. (*Id.* ¶ 16.)

On April 28, 2022, the Court denied Defendant's first motion to dismiss the Complaint. (ECF No. 11.) In a Letter Order, the Court explained that it could not decide whether the loan agreement is usurious, because the parties had "failed to provide . . . the necessary facts and law to make an informed decision on choice of law"—whether the contract should be interpreted under the laws of China or New Jersey. (*Id.* at 1.) The Court gave Defendant thirty days to provide the necessary information and to renew her motion. (*Id.* at 3.)

On October 21, 2022, the Court denied the second motion to dismiss. (ECF No. 19.) In so doing, the Court made several findings. First, "New Jersey provides the substantive contract law that governs th[e] contract dispute, a conclusion on which both parties seem[ed] to agree." (*Id.* at 3-6.) Second, the "post-default interest rate" of 0.5% per day that Defendant challenges "is not subject to the New Jersey usury law and thus[] cannot be the basis for finding the [loan] [a]greement usurious." (*Id.* at 6-7.) Third, the Court could not then determine whether the default rate is punitive and unenforceable as a matter of equity, because "neither party ha[d] provided

---

[2] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

sufficient facts for the Court to conduct . . . [the necessary] factual inquiry to determine (1) whether the increased interest rate was intended to be punitive and (2) whether there was any relation between the increased interest rate and any reasonably anticipated damage to Plaintiff as a result of default."[3]  (*Id.* at 7-9.) The Court once again gave Defendant thirty days to provide the necessary information and to renew her motion. (*Id.* at 9.)

On June 23, 2023, the Court denied the third motion to dismiss for two reasons.[4] (ECF No. 29.) First, the Court was unpersuaded by the contention that Plaintiff lacked standing. (*Id.* at 3-5.) Second, the Court found that Defendant had failed to "provide[] any new evidence" that would enable the Court to "complete the factual inquiry required to find the post-default interest rate unreasonable." (*Id.* at 5-6.) Defendant had "provide[d] no evidence, or even attorney argument, as to the bargaining power or intention of the parties, the difficulty in assessing damages, or the actual damages sustained." (*Id.* at 6.) The Court "recognize[d] the undisputed fact" that there was "a post-default interest rate of approximately 182.5% per annum, . . . which significantly exceeds the size of . . . increases in similar cases where courts have found such raises to be punitive," but the Court could not "conduct the factual inquiry required on such a scant record." (*Id.*)

On June 30, 2023, Defendant moved for reconsideration, asking the Court to find that the "enhance[d] interest demanded" by Plaintiff under the loan agreement is unreasonable as a matter of law. (ECF No. 30.) Plaintiff opposed, and Defendant replied. (ECF Nos. 31-34.)

---

[3]     The Court noted, however, that there were "strong[] suggest[ions] . . . that Plaintiff's claim may . . . seek punitive payment." (ECF No. 19 at 9 n.13.)

[4]     Although Defendant refers to the third motion to dismiss at times as a summary judgment motion, the notice of motion indicates that it was brought pursuant to Rule 12(b)(6) for failure to state a claim. (ECF No. 20 at 1.)

## II. LEGAL STANDARD

In the District of New Jersey, "Local Rule 7.1(i) creates a procedure by which a court may reconsider its decision 'upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision.'" *Solid Rock Baptist Church v. Murphy*, 555 F. Supp. 3d 53, 59 (D.N.J. 2021) (quoting *Agostino v. Quest Diagnostics Inc.*, Civ. No. 04-4362, 2010 WL 5392688, at *5 (D.N.J. Dec. 22, 2010)). "The 'purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

"Third Circuit jurisprudence dictates that a Rule 7.1(i) motion may be granted only if: (1) there has been an intervening change in the controlling law; (2) evidence not available when the Court issued the subject order has become available; or (3) it is necessary to correct a clear error of law or fact to prevent manifest injustice." *Id.* at 59-60 (citing *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 676 (3d Cir. 1999)).

Motions for reconsideration are "to be granted only sparingly," and they "'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Id.* at 59 (quoting *NL Indus., Inc. v. Com. Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)). "Mere 'disagreement with the Court's decision' does not suffice." *Rich v. State*, 294 F. Supp. 3d 266, 273 (D.N.J. 2018) (quoting *ABS Brokerage Servs., LLC v. Penson Fin. Servs., Inc.*, Civ. No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010)).

## III. DISCUSSION

Although default interest rates are an "accepted . . . means for lenders to offset a portion of the damages occasioned by delinquent loans," the rates may not rise to the level of being "punitive." *MetLife Cap. Fin. Corp. v. Washington Ave. Assocs. L.P.*, 732 A.2d 493, 503 (N.J. 1999). Default rates are thus "subject to the reasonableness test." *Id.* at 502; *see also Mony Life*

4

*Ins. Co. v. Paramus Parkway Bldg., Ltd.*, 834 A.2d 475, 481 (N.J. Super. Ct. App. Div. 2003) ("In New Jersey, . . . default interest rates . . . are subject to the test of reasonableness."). This test ordinarily examines "the difficulty in assessing damages, intention of the parties, the actual damages sustained, and the bargaining power of the parties," and it aims to determine whether the default rate "is reasonable under the totality of the circumstances." *MetLife Cap. Fin.*, 732 A.2d at 499 (citation omitted). And when a "default provision provid[es] for an unreasonable increase in the contract interest rate," it "is unenforceable as a penalty." *Id.* at 502.

"New Jersey cases have invalidated enhanced default interest rates if their size suggests a punitive intent." *Id.* (collecting cases). For example, default rates of twenty-five percent and up have been invalidated. *See, e.g.*, *TC Cap. Grp., LLC v. Jadallah*, 2021 WL 2763901, at *4 (N.J. Super. Ct. App. Div. July 1, 2021) ("We find the 25% interest rate imposed on . . . unpaid principal balance was unconscionable and unenforceable as an illegal penalty."); *Spiotta v. William H. Wilson, Inc.*, 179 A.2d 49, 53 (N.J. Super. Ct. App. Div. 1962) (finding default interest of 38.76% "unconscionable and unenforceable"); *Feller v. Architects Display Bldgs., Inc.*, 148 A.2d 634, 639 (N.J. Super. Ct. App. Div. 1959) (finding default interest rate of 32.87% "clearly unconscionable and unenforceable as a penalty"). Contrarily, courts have found default rates of twenty-four percent and under to be reasonable under the totality of the circumstances. *See, e.g.*, *MetLife Cap. Fin.*, 732 A.2d at 503 (default interest rate of 12.55% found reasonable because it was "well within the range demonstrated to be customary"); *Crown Bank v. Reilly Botbyl*, 2021 WL 955469, at *5 (N.J. Super. Ct. App. Div. Mar. 15, 2021) ("the default interest rate here of eighteen percent fell within the range of industry custom"); *Rosemont Properties, LLC v. IP Realty, LLC*, 2019 WL 2912855, at *6-7 (N.J. Super. Ct. App. Div. July 8, 2019) (finding that "the City did not meet its burden of proving that" a "default interest rate of twenty-four percent if the loan was not timely paid" was "unreasonable").

5

Here, the default interest rate on the disputed loan—about 182.5% per annum[5]—is significantly larger than the rates at issue in comparable cases. Thus, as the Court previously noted, there is cause to suppose that the rate is unenforceable under New Jersey law. But as the Court also explained, there is no *per se* rule in this context, and the "required inquiry" is "fact-intensive." *Crown Bank*, 2021 WL 955469, at *5. The competent evidence typically includes "industry information" (*i.e.*, what is customary),[6] the bargaining positions and tactics of the parties,[7] the intent of the default provision,[8] as well as anything that generally suggests "coercive intent."[9] This was not supplied by Defendant in her third motion to dismiss, and the June 23, 2023 Letter Order found that the record was insufficient for the Court to conduct the inquiry necessary to determine that the default rate is punitive and unenforceable under the totality of the circumstances. (ECF No. 29 at 5-6.)

On reconsideration, Defendant argues that the Court overlooked a June 15, 2021 arbitral decision that had been confirmed by the Superior Court of New Jersey. (ECF No. 30-1 at 2.) The arbitral decision, according to Defendant, establishes that fraud "was at the center [of] the loan's origination" and the aim was not to assist Defendant with funding her divorce but to serve "as a

---

[5]   The Court calculated this based on 0.5% interest per day in a 365-day year, but if the default interest rate also includes the pre-default rate of 9%, it would increase to 191.5%.

[6]   *Rosemont*, 2019 WL 2912855, at *7 ("It provided no industry information or other competent evidence suggesting that the rate was unreasonable.").

[7]   *Mony Life*, 834 A.2d at 484 ("There was no proof, for instance, of fraud, duress, or other unconscionable acts or sharp practices on the part of plaintiff. Similarly lacking was any suggestion that defendant was deprived of the opportunity to bargain with plaintiff . . . .").

[8]   *Matter of Timberline Prop. Dev., Inc.*, 136 B.R. 382, 386 (Bankr. D.N.J. 1992) ("[W]hile it is plausible that a three percent . . . increase upon default bears some relationship to actual administrative expenses incurred by the lender, . . . testimony . . . negates this inference.").

[9]   *Norwest Bank Minnesota v. Blair Rd. Assocs., L.P.*, 252 F. Supp. 2d 86, 95 (D.N.J. 2003) ("Certainly there was no evidence of any coercive intent by Norwest.").

strawman to exact a penalty afterwards." (*Id.*) She also contends that "[t]he fact that the Plaintiff only sued Defendant . . . and not the Defendant's rich ex-husband is . . . proof that Plaintiff does not need the money . . . and that the loan itself was a punitive measure." (*Id.* at 3.)

In opposition, Plaintiff argues that nothing in the arbitral decision "indicate[s] that [Plaintiff] conspired with [the ex-husband] to defraud" Defendant. (ECF No. 33 at 1.) Plaintiff also claims that he could not sue the ex-husband because "he would be violating the automatic stay provisions of the bankruptcy code." (*Id.* at 2.) Plaintiff submits that "Defendant can explore any of the . . . theories regarding the making of th[e] loan through the discovery process." (*Id.*)

The arbitral decision cited stems from binding arbitration in the divorce proceedings between Defendant and her ex-husband. (ECF No. 21 at 6.) In the written decision, the arbitrator fiercely criticizes the ex-husband for a lack of candor, detailing his repeated abuse of the legal process. (*Id.* at 26-37.) And as to the loan at issue in this case, the arbitrator referred to the terms of repayment as "punishing" and "exorbitant," finding that the ex-husband should have had sufficient assets available in 2015 to make unnecessary the borrowing of money on such terms. (*Id.* at 57-58.) The arbitrator observed that "[n]o bank official or neutral party [had been] called to verify the existence of the loan," and the arbitrator doubted the loan's very existence. (*Id.* at 58-59.) Ultimately, the arbitrator gave the ex-husband credit for half of the loan amount but refused to give the ex-husband "credit for alleged fees and interest he claim[ed] were incurred or . . . accruing on [the] alleged loan." (*Id.* at 59.)

Although the arbitral decision raises serious questions about the nature and circumstances of the loan at issue in this case, the arbitrator did not make findings of fact as to the default interest rate or the relationship between Plaintiff and Defendant that the Court can now rely on to invalidate either the loan entirely or the default interest rate specifically. The arbitrator's criticisms of the loan are general, and the arbitrator did not engage in the kind of fact-intensive analysis that would

allow the Court to deem the default interest unreasonable under the totality of the circumstances without any further inquiry. Nor can the Court simply infer from Plaintiff's decision to sue Defendant and not her ex-husband that the loan is punitive.

What has been presented certainly raises the specter that the loan, and its terms, may be fraudulent and intended to punish Defendant, but this finding should be made on a fuller record than what has been offered to date. *See Crown Bank*, 2021 WL 955469, at *5 ("[T]here is no *per se* rule regarding increases in default interest rates given the fact-intensive nature of the required inquiry. . . . [T]he *MetLife* test is . . . fluid with the financial circumstances in existence and sensitive to the circumstances of each case."). At this stage, the prudent course is to allow the parties to engage in limited discovery as to the issues central to the reasonableness determination— *e.g.*, the difficulty in assessing damages, intention of the parties, the actual damages sustained, and the bargaining power of the parties—and for the Court to then entertain motions for summary judgment under Rule 56 as to the enforceability of the default interest rate and any other issues the parties believe can be decided at that juncture. Therefore, the Court will deny the motion for reconsideration without prejudice to renewal of Defendant's arguments at a later stage.

## IV.     CONCLUSION

For the reasons set forth above, and other good cause shown, Defendant's Motion for Reconsideration (ECF No. 30) is **DENIED**. An appropriate Order follows.

Dated: January 24, 2024

*Georgette Castner*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE